**William Melvin RHOADES, Jr., Appellant,**

v.

**Jose CASTILLO and Central Freight Lines, Inc., Appellees.**

**No. 5171.**

Court of Civil Appeals of Texas, Waco.

Nov. 30, 1972.

---

Wallace Craig, Hurst, Eastland & Fly, Hillsboro, for appellant.

Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Woodfin Henderson, Dallas, for appellees.

HALL, Justice.

Jose Castillo, while driving a tractor-trailer for his employer, Central Freight Lines, Inc., collided with a pickup driven and occupied by William Melvin Rhoades, Jr. Rhoades brought this action against Castillo and the Freight Line, seeking personal injury and property damages. The Freight Line filed a cross-action for damages to its tractor.

Trial was to a jury. It found that Castillo committed various acts of negligence which caused the collision, and made awards for damages. Additionally, answering special issues numbered as follows, the jury found (14) that Rhoades was driving at an excessive rate of speed, which (15) was a proximate cause of the collision.

A "take nothing" judgment was rendered on the verdict against all parties. Only Rhoades has appealed. He comes forward with five points of error, contending: (1) that there is no evidence, or, alternatively, that the evidence is factually insufficient, to support the jury's answers to issues 14 and 15; (2) that the trial court erred in overruling his motion to disregard the answers to issues 14 and 15; and (3) that, as a matter of law, his speed could not have been an act of negligence or a proximate cause of the collision.

■ To properly decide the "no evidence" question, we may consider only the evidence and inferences therefrom that support the findings and we must reject all contrary evidence and inferences; and a correct determination on the question of factual sufficiency of the evidence requires that we consider and weigh all of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

Viewed most favorably in support of the jury's findings, the record reveals the following facts. The collision occurred on Stemmons Freeway in Dallas, Texas, on May 6, 1971, at 7:40 P.M. Castillo and Rhoades were both traveling South. There was intermittent rain. The expressway provided four lanes for southbound traffic. When Castillo first drove onto the freeway, he got in the lane next to the inside lane and remained there until the time of collision. Castillo had reached a top speed of 45 miles per hour on the freeway; but, as he approached the point of the collision he slowed his vehicle to 30–35 miles per hour because traffic was "beginning to pile up", the street was wet, and he was climbing an incline. Rhoades passed Castillo in the lane immediately to Castillo's right while they were on the incline, and then turned into the same lane that Castillo was driving. Rhoades "pulled away" from Castillo, and when their vehicles were about 100 feet apart, Rhoades moved his pickup into the inside lane on his left. The parties were now traveling on a downgrade. Immediately before Rhoades changed into the inside lane, he was "very close" to a white Cadillac automobile that was in front of him. Traffic in the inside lane slowed, and Rhoades moved back into Castillo's lane, about 100 feet in front of Castillo and "almost to the back bumper" of the Cadillac. Soon, Rhoades and the driver of the Cadillac began simultaneous turns into the inside lane on their left. Rhoades immediately applied his brakes "hard." When he did so, he lost control of the pickup. It skidded sideways in the two middle lanes with its front facing west, and finally stopped in that position. From the time the pickup began sliding, Rhoades was unable to regain control of it. When he applied his brakes he "was right on top" of the Cadillac and thought that he had hit it. When Castillo saw the pickup go out of control, he "slammed" his brakes. This caused the tractor he was driving to "jack-knife" and turn toward the west. The trailer continued straight. The tractor and trailer slid down the roadway in this position, and came to rest after the left rear wheels of the tractor had struck the pickup on its right side between the cab and rear wheels. This impact caused the front of the pickup to crash into a guard rail.

■ We believe, and hold, that the evidence is legally sufficient to support the jury's answers to issues 14 and 15. Moreover, a review of the entire record leads us to the conclusion that the evidence is factually sufficient to support those findings.

The jury answered, "we do not" to special issue no. 18, which asked: "Do you find from a preponderance of the evidence that * * * Rhoades failed to maintain an assured clear distance between his vehicle and the white Cadillac vehicle?" "Assured clear distance" was defined by the court to mean "that distance which would be maintained by a driver using ordinary care when following another vehicle, considering the speed of such vehicles, and the traffic upon and conditions of the street, so that the following vehicle can be safely brought to a stop without colliding with the preceding vehicle, or veering into

other vehicles, objects or persons on or near the street."[1]

Rhoades' motion to disregard the jury's answers to issues 14 and 15 was founded on the ground that those answers "are in conflict with Special Issue No. 18 wherein the jury found that the plaintiff did in fact maintain an 'assured clear distance' considering, among other things, the speed of plaintiff's vehicle."

Rhoades has misinterpreted the jury's answer to issue 18. It is not, as he asserts, a finding that he maintained an "assured clear distance" between the pickup and the Cadillac. Rather, the negative answer to this issue simply means, in law, that the defendants failed to carry their burden of proving the fact inquired about. C. & R. Transport, Inc. v. Campbell, (Tex.Sup., 1966) 406 S.W.2d 191, 194. In any event, a motion to disregard a jury's answers may not be granted because of fatal conflict in the answers. W. T. Grant Company v. Key, (Tex.Sup., 1968) 433 S.W.2d 163, 164. Moreover, the answers in question are not in irreconcilable or fatal conflict. To be so, the answers must concern the same subject matter, Turner v. Victoria County Electric Co-Operative Co., (Tex.Civ.App., 1968, no writ hist.) 428 S.W.2d 484, 486; and "the conflict between the answers must be such that one answer would establish a cause of action or defense, while the other would destroy it." Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, 991. Those elements are not present, here. The jury may have determined that inasmuch as Rhoades did not collide with the Cadillac the preponderance of the evidence does not show that he was less than an assured clear distance from it. In the light of the record, the jury's answer to issue 18 must be considered generous to Rhoades; but it does not inhibit or conflict with determinations by the jury, permissible under the record, that his speed was too fast to enable him to maintain control of his vehicle when and after he attempted to turn and slow it, and that the speed was therefore imprudent and a contributing cause of the collision.

Finally, Rhoades likens this accident to a rear-end collision and argues that because his was the forward vehicle the speed at which he was driving it could not, as a matter of law, have been an act of negligence or a proximate cause of the collision. This argument necessarily assumes that while Rhoades was driving on the roadway, and without fault on his part, his vehicle was overtaken and struck by defendants' vehicle. Those are not the undisputed facts in this case, and the proposition is without merit.

The judgment is affirmed.